UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FRANKIE LEE CHAPPELL,

    Plaintiff,

v.                                                        Case No.  5:18-cv-199-TKW/MJF

UNITED STATES OF AMERICA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before this court on Defendant's motion for summary judgment (Doc. 45). Despite being provided an opportunity to respond, Plaintiff Frankie Lee Chappell ("Chappell") did not file a response in opposition. *See* (Doc. 46). Upon review of the record, the undersigned recommends that Defendant's motion for summary judgment be granted because Chappell has failed to demonstrate that a genuine issue of material fact exists.[1]

### I. Procedural Background

Chappell commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80. (Doc. 1). Chappell asserts that the Bureau of

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Prisons ("BOP") kitchen staff failed to monitor inmates as they cooked chicken, which resulted in Chappell becoming ill with severe food poisoning, colitis, and an unspecified "blood disease." (*Id.* at 10). He also asserts that a BOP physician, Dr. Lopez, negligently treated his medical conditions. (*Id.*).

## II.  Undisputed Facts

On November 3, 2016, Chappell ate lunch—chicken and black-eyed peas flavored with "chicken drippings"—prepared by "food service" at FCI Marianna. (Doc. 1 at 5 ¶ 1).[2] He alleges that inmate cooks did not handle the chicken properly because supervisors failed to monitor the cooks.

On November 4, 2016, Chappell and several other inmates reported to Health Services at FCI Marianna with complaints of vomiting, diarrhea, and abdominal pain. (*Id.* at 5 ¶ 2; Doc. 45-1 at 13-17; Doc. 51-2 at 2 ¶ 4). In addition, Chappell complained of blood in his stool. (Doc. 1 at 5 ¶ 2; Doc. 45-1 at 13-17). The inmates and Chappell did not have fevers, however. (Doc. 45-1 at 13-17; Doc. 51-2 at ¶ 4).

Some inmates were quarantined due to the unknown origin of the symptoms. (Doc. 51-2 at 2 ¶ 4). Additionally, medical personnel collected stool specimen from

---

[2] Plaintiff's verified complaint can be treated as an affidavit for the purpose of summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *Baker v. Norman*, 651 F.2d 1107, 115 (5th Cir. Unit A 1981)); however, "statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact" and "cannot be used to defeat a motion for summary judgment." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

three inmates who exhibited symptoms.  Only one specimen was "viable," however. (*Id.*). The viable specimen was negative for two types of bacteria: salmonella and shigella.[3] (*Id.*).

On November 7, 2016, Chappell returned to health services. He indicated that his stools had "slowed" down but that some blood remained in his stool. (Doc. 45-1 at 18-19). Chappell had a history of colon polyps. (*Id.*; *see* Doc. 1 at 6 ¶ 6). Prison medical personnel, therefore, ordered a colonoscopy. (Doc. 45-1 at 19).

On November 14, 2016, Chappell returned to health services with complaints of abdominal pain. (*Id.* at 21). Chappell did not appear to be in acute distress and was advised to take ibuprofen for any pain. (*Id.* at 22). On November 22, 2016, medical personnel prescribed aspirin and requested a hematology consult. (*Id.* at 24). Between November 23, 2016, through January 3, 2017, Chappell did not report to health services. *See* (Doc. 1 at 6 ¶¶ 9-10; Doc. 45-1).

On January 4, 2017, Chappell returned to health services and complained of diarrhea and abdominal pain. (Doc. 1 at 6 ¶ 10; Doc. 45-1 at 26-27). Medical personnel advised Chappell to consume more fiber. (Doc. 45-1 at 27). Medical

---

[3] Individuals infected with Salmonella typically develop diarrhea, vomiting, fever, and abdominal pain or cramps within 12 to 72 hours after infection. (Doc. 51-2); Stedman's Med. Dictionary 706620 (2014). This infection lasts typically four to seven days. (Doc. 51-2). Shigella is present in the stool of an infected person while they are infected and for up to two weeks thereafter. *Id.*

personnel also ordered tests to determine if Chappell had the Clostridium difficile toxin ("*C. diff*"). (*Id.*). These tests returned with negative results. (*Id.* at 33).

On January 13, 2017, Chappell returned to health services because he was passing "blood clots" and continued to have diarrhea. (*Id.* at 29). Medical personnel prescribed metronidazole. (*Id.*). On January 24, 2017, Chappell followed up with health services. He reported that he "had gotten much better" after treatment with the flagyl, which is a brand name for metronidazole. (*Id.* at 34).

On February 2, 2017, Chappell reported to health services that his abdominal pain had worsened and that he was having difficulty urinating. (Doc. 1 at 6 ¶ 11; 45-1 at 38). He also had a fine rash across his abdomen. (Doc. 45-1 at 38). Medical personnel ordered an x-ray image of Chappell's abdomen and sent laboratory tests to a local hospital. (*Id.*). Radiologist Maurice Yu, M.D., examined the x-ray images later that same day and noted her findings: "no bowel obstruction. There is mild constipation. There is no radiographic evidence for a radiodense urinary calculus. There is no evidence of organomegaly, abnormal calcifications or obvious soft tissue masses. The osseous structures are intact." (*Id.* at 40).

On February 3, 2017, medical staff ordered tests to determine if Chappell suffered from polycythemia vera, which is a type of blood cancer. (Doc. 45-1 at 43-45). Medical personnel collected a stool sample which tested negative for Shiga toxins, Escherichia coli, enteric Campylobacter, Salmonella, and Shigella.

On February 17, 2017, prison staff sent Chappell to Jackson Hospital in Marianna, Florida for a colonoscopy. (*Id.* 50-52). Treatment notes indicate that Chappell tested positive for *C. Diff*—a bacterium that causes diarrhea and colitis—and medical staff treated Chappell with flagyl intravenously and vancomycin orally. (*Id.* at 53). While at the hospital, Chappell experienced bursitis in his left shoulder, which was treated with an injection of a steroid and the local anesthetic Marcaine. (*Id.*). Chappell was discharged with the following diagnoses: (1) pseudomembranous enterocolitis, (2) gastroesophageal reflux disease, (3) chronic obstructive pulmonary disease, (4) possible polycythemia vera, and (5) bursitis of the left shoulder. (*Id.*).

On March 2, 2017, Chappell returned to health services. He complained of abdominal discomfort and diarrhea with blood. (*Id.* at 57). That same day, prison medical staff sent Chappell to Jackson Hospital, which admitted Chappell. (Doc. 1 at 7 ¶ 17; Doc. 45-1 at 62). Throughout his hospital stay, Chappell suffered intermittent loose stools, but reported no abdominal pain and generally was asymptomatic. (Doc. 45-1 at 62). Chappell, however, complained about his bursitis, and medical personnel administered intraarticular steroidal injection, which relieved Chappell's pain. He had cellulitis of the right forearm from a previous IV site, which was treated with vancomycin intravenously. (*Id.*). He was tested for *C. diff*, which came back negative. Chappell underwent a second colonoscopy and was diagnosed

with: (1) ulcerative colitis; (2) cellulitis/superficial thrombophlebitis, right arm, resolved; (3) bursitis, right shoulder; (4) possible polycythemia vera; (5) chronic obstructive pulmonary disease; and (6) gastroesophageal reflux disease. (*Id.*). Jackson Hospital discharged Chappell on March 8, 2017. (Doc. 45-1 at 62).

On March 20, 2020, Chappell reported to health services with complaints of right shoulder pain that had persisted since his hospital stay. (*Id.* at 70). The medical staff ordered x-ray images and prescribed a Lidocaine injection. (*Id.* at 70-71). The x-ray images indicated that Chappell's shoulder bones were "in anatomic alignment without evidence of fracture or dislocation." The physicians diagnosed Chappell with "moderate osteoarthritis of the right acromioclavicular joint" and "mild osteoarthritis of the right glenohumeral joint." (*Id.* at 72). Chappell returned to health services on March 30, 2017, complaining of shoulder pain. Medical staff ordered a magnetic resonance image of Chappell's shoulder. (*Id.* at 74-75).

On April 11, 2017, Dr. Lopez cancelled Chappell's Tylenol 3 prescription because it was not indicated for cellulitis. (Doc. 1 at 7 ¶ 22; Doc. 45-1 at 82; Doc. 51-1 at 2-3). Additionally, Chappell returned to medical complaining of muscle joint pain in his right upper arm. (Doc. 45-1 at 80). Medical staff noted that Chappell had a 12 cm oval area of erythema that was warm to the touch and tender. (*Id.* at 81). They transferred Chappell to the emergency room to rule out a deep vein thrombosis, and the emergency room staff treated Chappell for an abscess. (*Id.* at 84-89).

Chappell subsequently returned to health services for follow-up wound care. (*Id.* 96-106). On June 21, 2017, Chappell was seen by Dr. Lopez in the chronic care clinic. (*Id.* 108-12). Chappell asserts that at the time he filed his complaint he was still receiving treatment for his colitis and an unspecified "blood disease." (Doc. 1 at 8 ¶¶ 26-27).

### III.  Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## IV.   Discussion

The Federal Tort Claims Act was "designed to provide redress for ordinary torts recognized by state law." *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001)). Under the FTCA, the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances," applying the applicable state law. *See* 28 U.S.C. § 2674; *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008). Thus, when addressing an FTCA claim, courts

must apply the law of the state where the alleged tortious act occurred. *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015); *Duque v. United States*, 216 F. App'x 830, 832 (11th Cir. 2007); *Stone*, 373 F.3d at 1130. Here, Chappell alleges that, while incarcerated at FCI Marianna in Florida, Defendant negligently supervised inmate cooks when they were preparing food and negligently treated Chappell's medical needs. Therefore, Florida tort law applies to Chappell's claims.

### A.     Chappell's Claim of Medical Negligence

Defendant argues that the court should grant summary judgment in its favor because Chappell has failed to create a genuine issue of material fact regarding three key elements: the relevant standard of care, breach of that standard of care, and causation. (Doc. 45 at 12, 16-21).

Florida Statute § 766.106(1)(a) defines a claim for "medical negligence" or "medical malpractice" as "a claim arising out of the rendering of, or the failure to render, medical care or services." *J.B. v. Sacred Heart Hosp.*, 635 So. 2d 945, 948-49 (Fla. 1994). To establish a claim for medical negligence in Florida, a plaintiff must establish: (1) the standard of care owed by the defendant; (2) the defendant's breach of the standard of care; and (3) that the breach proximately caused the damages claimed (*i.e.*, that the damages were the direct result of the medical care or treatment). *Gooding v. Univ. Hosp. Bldg. Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984);

*see Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001); *Saunders v. Dickens*, 151 So. 3d 434, 441 (Fla. 2014).

Section 766.102, Florida Statutes, defines the standard of care for medical malpractice claims as "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102(1); *Saunders*, 151 So. 3d at 441. That is, a doctor must "provide the care that a reasonably prudent physician would provide." *Saunders*, 151 So. 3d at 441. Generally, a plaintiff must provide expert testimony to establish the prevailing professional standard of care. *Lambert v. United States*, 198 F. App'x 835, 839 (11th Cir. 2006); *Bush v. United States*, 703 F.2d 491, 495-96 (11th Cir. 1983); *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995).[4]

Chappell did not provide any evidence from a medical expert which indicates the relevant standard of care. That itself is fatal to his negligence claims regarding medical care. *Lambert*, 198 F. App'x at 839.

---

[4] There is one exception, not applicable here, in cases where "only the exercise of common sense and ordinary judgment are required" to prove medical negligence. *McCall v. United States*, 663 F. Supp. 2d 1276, 1288-89 (N.D. Fla. 2009), *rev'd in part on other grounds, McCall v. United States*, 571 F. App'x 744 (11th Cir. 2014); *Stepien v. Bay Mem'l Med. Ctr.*, 397 So. 2d 333, 334 (Fla. 1st DCA 1981). "This exception applies where the medical provider's want of skill or lack of care 'is so obvious as to be within the understanding of laymen' such that only common knowledge and experience are required to judge it." *McCall*, 663 F. Supp. 2d at 1289 (quoting *Atkins v. Humes*, 110 So. 2d 663, 665-66 (Fla. 1959)).

Chappell also failed to provide deposition testimony or an affidavit from a medical expert which indicates that Defendant's treatment of his medical conditions fell below the relevant standard of care. Although in his complaint Chappell includes allegations that Defendant violated the duty of care that it owed to Chappell, he offers no evidence that support these allegations and, indeed, his medical records flatly contradict this claim. *See Ellis*, 432 F.3d at 1326 ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

Furthermore, Chappell has not offered any evidence indicating that any actions or omissions by Defendant were the "but for" or proximate cause of Plaintiff's unspecified "blood disease" or his colitis. Chappell bears the burden of establishing both "but for" and proximate causation at trial, and therefore he was required to offer some evidence indicating that a genuine issue of material fact exists with respect to causation. *Lewis*, 260 F.3d at 1262 (stating that it is plaintiff's burden to prove causation). Chappell failed to put forth any such evidence, however.

Because Chappell has not demonstrated that a genuine issue of material fact exists with respect to three essential elements of this claim, Defendant is entitled to summary judgment on this claim.

B.  **Chappell's Claim of Negligence by the Kitchen Staff**

Chappell also asserts that members of the kitchen staff at Marianna FCI—whom Chappell does not identify—negligently supervised inmates when they prepared food. Specifically, Chappell asserts that inmate cooks added "drippings from chicken" to black-eyed peas "to add flavor." (Doc. 1 at 5 ¶ 1). He asserts that Defendant failed to supervise these inmate cooks. (*Id.* at 10).

To state a claim for general negligence under Florida law, a plaintiff must establish: (1) the standard of care owed by the defendant; (2) the defendant's breach of the standard of care; and (3) that the breach proximately caused the damages claimed. *Lewis*, 260 F.3d at 1262.

The parties agree that the duties of the BOP cook supervisors are found in the National BOP Program Statement of the Food Service Manual. (Doc. 1 at 8-9 ¶ 29; Doc. 45 at 13). In relevant part this Manual states:

> [U]nder the supervision of the food service administrator or the assistant food service administrator (FSA or AFSA) cook supervisors are responsible for inmate supervision related to Food Service, specifically food production and sanitation, with emphasis on food safety. Cook Supervisors perform duties in the Standardized Position Description for Cook Supervisors and locally developed Post Orders.

National BOP Program State 4700.06, Food Service Manual, at 10.

The BOP requires cook supervisors to "ensure cooking and cooling temperatures are monitored regularly as work is in progress." (*Id.* at 32). Additionally, "all staff assigned posts monitoring food production and safety,

including food/machine temperatures, and service of food on servicing lines and self-services areas during all hours of operation, must be qualified full-time Food Service employees and having a working knowledge of the Food Service Manual." *Id.*

Here, Chappell has failed to create a genuine dispute as to two essential elements of his negligence claim: breach of the duty of care and causation. In his complaint, Chappell states that "chicken drippings" were added to the black-eyed peas. (Doc. 1 at 5 ¶ 1). He offers only a conclusory allegation that that BOP kitchen supervisors failed to supervise the inmate cooks handling the chicken.

Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Unfortunately for Chappell—other than Plaintiff's verified complaint, which fails to indicate that Chappell had personal knowledge—the record is devoid of any evidence supporting Chappell's conclusory allegations. That is, Plaintiff does not allege that he was present in the kitchen to observe the BOP supervisor fail to supervise the inmate cooks. For that matter, he does not allege that he personally observed the cooks add "chicken drippings" to the black-eyed peas. Thus, there is no evidence indicating that Chappell had personal knowledge of these facts. Allegations that are not based

on personal knowledge are insufficient to withstand summary judgment. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) ("All affidavits must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence."); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 850 (11th Cir. 2000) (explaining that "bare and self-serving allegation[s]" without any personal knowledge are not sufficient to withstand summary judgment); *see Ellis*, 432 F.3d at 1327 (same). "Belief, no matter how sincere, is not equivalent to knowledge," and is not sufficient to withstand summary judgment. *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949).

As to the element of causation, Chappell has not created a genuine issue of material fact as to his allegation that his intestinal issues were caused by food poisoning, which in turn was caused by the food he consumed, which in turn was contaminated because BOP supervisors failed to supervise the cooks. As to his allegation that he suffered food poisoning, it is undisputed that none of the inmates—including Chappell—had a fever, which is an indicia of food poisoning. (Doc. 45-1 at 13-17; Doc. 51-2 at 2 ¶ 4). The only viable stool sample—collected from an inmate experiencing the same symptoms as Chappell—was negative for Salmonella and Shigella, which are common bacteria that cause food poisoning. (Doc. 51-2 at 2 ¶ 4). True, some other food-borne bacteria may have been present, but Chappell offers no evidence of this. Thus, the record does not indicate that Chappell suffered from

food poisoning, much less food poisoning caused by inadequate supervision of prison cooks.

The only evidence supporting Chappell's allegation that his colitis and his unspecified "blood disease" were caused by food poisoning is his assertion that these ailments manifested themselves *after* he consumed the black-eyed peas. That temporal sequence is necessary to establish causation but in itself is insufficient to create a genuine issue as to causation. *See Abede v. Thermo Fisher Scientific, Inc.*, 711 F. App'x 341, 342 (7th Cir. 2018) (stating that plaintiff "offers no evidence of causation other than the temporal sequence, but *post hoc ergo propter hoc* is not a reliable means of showing causation."); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1046 (9th Cir. 2017) ("[W]e are mindful of avoiding 'the logical fallacy of *post hoc, ergo propter hoc*.'"). *Post hoc ergo propter hoc* is "a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005); *see also Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting "the *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence"). "Timing may be an important clue to causation, but does not eliminate the need to show causation . . . ." *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998).

Evidence of causation must entail "more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) (en banc) (per curiam) (noting that when "causation evidence is primarily based on conjecture and speculation" it is "insufficient to create a genuine issue of material fact for trial"). Furthermore, Chappell's mere opinion—unsupported by an expert—that the improper handling of chicken caused food poisoning, which in turn caused his colitis and "blood disease," is insufficient to create a genuine issue of material fact as to causation. *See Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) ("Conclusory, uncorroborated allegations by a plaintiff . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion."); *Ellis*, 432 F.3d at 1326 (same). Because Chappell has failed to demonstrate the existence of a genuine issue of material fact as to at least two essential elements of his claim, summary judgment for Defendant is appropriate.

## V.  Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendant's motion for summary judgment (Doc. 45) be **GRANTED**.

2. The clerk of the court be directed to close the case file.

At Panama City Beach, Florida this 16th day of July, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.